# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

**KRYSTAL TRESLER,**       )
       )
       **Petitioner,**     )
       )
**v.**       )      **Case No. 4:22-CV-00354-NCC**
       )
**CHRIS MCBEE,**       )
       )
       **Respondent.**    )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1). Respondent has filed a response (Doc. 9), and Petitioner has filed a traverse (Doc. 17). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 11). After reviewing the case, the Court has determined that Petitioner is not entitled to relief. As a result, the Court will **DENY** the Petition and **DISMISS** the case.

## I. PROCEDURAL HISTORY[1]

On March 27, 2016, Petitioner was found guilty by a jury in the Circuit Court of Ralls County, Missouri of robbery in the first degree (Count I) and murder in the second degree (Count II) (Doc. 9-1 at 959). The jury sentenced Petitioner to 10 years on each count and the Circuit Court ran the sentences consecutive, for a total sentence of 20 years in the Missouri Department of Corrections (Doc. 9-1 at 1112). Petitioner appealed the judgment, raising four claims:

> (1) The trial court abused its discretion in denying Ms. Tresler's motion to dismiss, because this ruling violated Ms. Tresler's right to due process as guaranteed by the 14th Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that 1) there was an implicit

---

[1] The Court takes judicial notice of Petitioner's underlying cases: Case Nos. 14MR-CR00567-01, 15RL-CR00074, ED104415, 18RL-CV00023, and ED107256.

agreement that if Ms. Tresler testified at a co-defendant's preliminary hearing, she would not be prosecuted; 2) Ms. Tresler fulfilled her duty of testifying at the preliminary hearing; 3) and this prosecution is directly related to the matters testified to by Ms. Tresler.

(2) The trial court abused its discretion in rejecting Defense Exhibit A, the letter from Mr. Redington indicating that Ms. Tresler had been cooperative with the prosecutor's office and the police, because this violated Ms. Tresler's rights to due process and to present a defense as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, Sections 10 and 18(a) of the Missouri Constitution, in that this evidence was relevant to show the jury that although Ms. Tresler was not truthful with the police for a period of hours on the morning after the robbery occurred, she was cooperative with the police and prosecutor for approximately a year before she was ever charged with a crime.

(3) The trial court erred in submitting Instruction No. 7, the verdict director for robbery in the first degree, to the jury because this instruction violated MAI-CR 3d 304.04, Ms. Tresler's right to due process, to a properly instructed jury, and to a fair trial, as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that this instruction contained language added by the State that deviated from MAI-CR 3d 304.04; furthermore, this added language had the potential to confuse and mislead the jury into believing that if it found Ms. Tresler provided her van, provided directions to the gas station, accompanied Mr. Studer to the robbery, and fled with Mr. Studer, she was automatically guilty of robbery in the first degree.

(4) The trial court abused its discretion in overruling counsel's request for a mistrial when the State violated a motion in limine by failing to edit out a reference to the fact that Mr. Wiltermood was a sex offender, because this violated Ms. Tresler's rights to due process of law, a fair trial before a fair and impartial jury, and to be tried only for the offenses charged, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10, 17, and 18(a) of the Missouri Constitution, in that the evidence of the uncharged offense was inadmissible and barred by the court's order in limine, and the effect was to plant the idea in the jurors' minds that Ms. Tresler was dating a sex offender, thus unfairly and irretrievably prejudicing the jury.

(Doc. 9-2). On September 12, 2017, the Missouri Court of Appeals for the Eastern District affirmed the judgment (Doc. 9-5). Petitioner filed an application for transfer, which was denied (Docs. 9-6, 9-7). The Missouri Court of Appeals' mandate issued on December 27, 2017.

Petitioner filed her pro se motion for post-conviction relief on January 19, 2018.  On April 25, 2018, counsel filed an amended motion for post-conviction relief on Petitioner's behalf raising four claims:

> (1) Movant's rights were violated when the State was allowed to submit into evidence and read the transcript of Movant's testimony at Michael Studer's preliminary hearing.

> (2) Counsel, Patrick S. Kilgore, failed to secure an agreement for witness immunity with the State prior to Movant testifying at Michael Studer's preliminary hearing.

> (3) Direct appeal counsel unreasonably failed to allege the properly preserved claim regarding a cumulative and highly prejudicial video clip that was played for the jury and labeled "State's Exhibit 40-B".

> (4) Trial counsel unreasonably failed to call an expert witness, such as pharmacologist Marilyn James-Kracke, to testify as to the significance of the combination of drugs Movant was on at the time of the robbery.

After an evidentiary hearing, the motion court denied Petitioner's amended motion. Petitioner appealed claims (2) and (3).  On March 2, 2021, the Missouri Court of Appeals for the Eastern District affirmed the motion court's denial of the motion (Docs. 9-10, 9-12).  The Missouri Court of Appeals' mandate issued on March 25, 2021 (Doc. 9-11).

On March 25, 2022, Petitioner filed her Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1).  Grounds One through Three reflect Petitioner's first, second, and fourth claims on direct appeal; Ground Four reflects her second claim from her post-conviction case; and Ground Five was not previously raised.

## II.  DISCUSSION

In the habeas setting, a federal court is bound by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, to exercise only "limited and deferential

review" of underlying state court decisions. *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

### A. Equitable Immunity (Ground One)

In Ground One, Petitioner asserts, as in her direct appeal, that she was denied her rights to due process of law, under the Fourteenth Amendment to the United States Constitution when the trial court denied her motion to dismiss based upon equitable immunity (Doc. 1 at 7). The Missouri Court of Appeals set out the following relevant facts:

> The Marion County Prosecuting Attorney, the initial prosecutor, immediately filed complaints against Studer and Wiltermood. The State subpoenaed the defendant to testify at Studer's preliminary hearing, and the defendant consulted an attorney ("preliminary-hearing counsel") about whether she should do so. According to his hearing testimony on the defendant's motion to dismiss the

4

charges, preliminary-hearing counsel stated that he spoke via telephone with the prosecuting attorney because he was concerned that his client might be the focus of an investigation or a suspect. Preliminary-hearing counsel understood from his discussion with the prosecuting attorney "that, in [the prosecutor's] opinion and his review of the case, that [Tresler] was a witness and nothing more and he had no intention of charging her with any offense regarding the incident." On cross-examination, preliminary-hearing counsel testified that he did not negotiate an agreement that the State would not charge his client.

> Q. Okay. And at that time did you all negotiate any sort of plea (sic) agreement—
>
> A. No.
>
> Q. *—that if she were to testify, she would not be charged?*
>
> A. *No.* I mean, I—at that point, based on what [the prosecutor] told me, he said she was not going to be charged.
>
> Q. Okay. She was not the focus and that he did not have intent to charge her at that time?
>
> A. That he had—yeah, That he, as far—I think his words to me were, *"I consider her to be a witness and nothing more."*

Furthermore, preliminary-hearing counsel did not state that the initial prosecutor told him if Tresler testified against Studer and/or Wiltermood, she would not be charged. No other witnesses testified at the hearing on the defendant's motion to dismiss.

The defendant testified at Studer's preliminary hearing. She acknowledged that she owned the van the group used the day of the robbery and murder, and she described the group's Walmart stop, Studer's exit from Walmart with a camouflage hat and gloves, the seating arrangements in the van, Studer's exit from the van in the bank parking lot, his walk from the bank around the back of the Abel's and into the store, the confrontation in the store, Studer's shooting of Arnett, and the group's travel to the river where Studer disposed of clothing and presumably the gun. On cross-examination, the defendant denied knowing that anyone in the group was drinking alcohol or using drugs, and she denied hearing anyone talk about robbing a gas station. She also denied that she made any deals with the State in connection with the case or in exchange for her testimony.

> Q. Have you made any deals with the State of Missouri to testify here today?
>
> A. No, ma'am.

Q. Or in this case at all?

A. No, ma'am.

Studer and Wiltermood each pled guilty to murder. Several weeks after the defendant testified at Studer's preliminary healing, the initial prosecutor wrote a letter for the defendant to her legal counsel in an Arkansas child-custody matter. The letter stated:

> Krystal Treasler (sic) is a witness for the Prosecution in a robbery/murder case which I filed. She is not a suspect or co-conspirator and will not be charged with any crime. Her unfortunate presence at the scene of this crime should not be used against her in any custody dispute. She has been cooperative with my office and with the police.

Shortly thereafter, the elected Marion County Prosecuting Attorney became a judge, and the new Marion County Prosecuting Attorney sent the cases against Studer and Wiltermood to the Attorney General's Office for prosecution because of a conflict of interest. The Attorney General eventually charged the defendant with first-degree robbery and second-degree felony murder in connection with the death of Arnett. The record gives no indication about what prompted the filing of charges against the defendant.

*State v. Tresler*, 534 S.W.3d 308, 312–14 (Mo. Ct. App. 2017) (emphasis and alterations in original).  Petitioner does not dispute these facts.  *See* Doc. 1 at 7-10.[2]

The Missouri Court of Appeals upheld the denial of Petitioner's motion to dismiss, finding that there had been no promise of immunity in exchange for Petitioner's preliminary hearing testimony.  *Tresler*, 534 S.W.3d at 317.  The court noted that: preliminary-hearing counsel did *not* testify that the initial prosecutor had promised Petitioner immunity or anything else in exchange for her cooperation or testimony; preliminary-hearing counsel testified on cross-examination that he did not negotiate an agreement that the State would not charge Petitioner; and Petitioner testified at the preliminary hearing that she had not made any deals with the State,

---

[2]  To the extent Petitioner argues that the Missouri Court of Appeals' decision was an unreasonable determination of the facts, see Doc. 1 at 11, that argument is denied.

including for her testimony.  *Id.*  The court further noted that the prosecutor's letter in Petitioner's child custody case came *after* Petitioner had testified at the preliminary hearing.  *Id.* at 317-18.  The court found "no evidence that the State held out a conditional promise that it would not prosecute the defendant if she testified at Studer's preliminary hearing, or that it engaged in conduct calculated to lead the defendant to expect an agreement."  *Id.* at 317.  The court concluded that "[a]t most, the record reveals that the initial prosecutor represented that he did not intend to charge the defendant because she was merely a witness."  *Id.* at 318.

Petitioner argues that the Missouri Court of Appeals' decision was an unreasonable application of *Shotwell Mfg. Co. v. United States*, 371 U.S. 341 (1963) and *Santobello v. New York*, 404 U.S. 257 (1971) (Doc. 1 at 11).  In *Shotwell*, the Supreme Court stated that the Fifth Amendment protects against "evidence of guilt induced from a person under a governmental promise of immunity," but did not define the contours of such a right.  371 U.S. at 347.  There, the Court considered the defendants' use of the Treasury's "voluntary disclosure" policy that delinquent taxpayers could escape possible criminal prosecution by disclosing their derelictions to the taxing authorities before any investigation of them had commenced.  *Id.* at 344.  The Court found that the policy was not sufficient to trigger Fifth Amendment protection because "[t]he offer was nothing more than part of a broad administrative policy designed to accomplish the expeditious and economical collection of revenue," and the policy was "addressed to the public generally and not to particular individuals" and "was not an invitation aimed at extracting confessions of guilt from particular known or suspected delinquent taxpayers."  *Id.* at 348.  The Court further found that the defendants had not complied with the policy insofar as they had made a fraudulent statement.  *Id.* at 345, 349.

In *Santobello*, as part of the defendant's plea bargain, the initial prosecutor agreed to make no recommendation as to the sentence.  404 U.S. at 258.  Later, a new prosecutor took over and recommended the maximum one-year sentence.  *Id.* at 259.  The Supreme Court vacated the conviction and remanded the case, stating that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Id.* at 262.

A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Williams*, 529 U.S. at 407-08.  *Santobello* is inapposite, as that case involved the failure to fulfill a promise as part of a plea bargain.  Thus, the only question is whether the Missouri Court of Appeals correctly identified but unreasonably applied the governing legal rule from *Shotwell*.  Petitioner fails to identify *how* the court unreasonably applied *Shotwell*.  *See* Doc. 1 at 11.[3]  Given the ill-defined nature of the principle laid down in *Shotwell*, this Court cannot say that the Missouri Court of Appeals unreasonably applied that case.  *See United States v. Short*, 671 F.2d 178 (6th Cir. 1982) (prosecutor was not guilty of prosecutorial misconduct, despite defendant's claim that he received "equitable immunity" from prosecution when he was advised that he was not a target of the grand jury's investigation, and that he answered questions on basis of such assurances); *see also Reed v. United States*, 106 F.3d

---

[3]  In her traverse, Plaintiff cites to Justice Black's concurrence in *Grunewald v. United States*, 353 U.S. 391 (1957).  The concurrence is inapposite.  In *Grunewald*, the defendant had asserted his Fifth Amendment privilege before the grand jury.  353 U.S. at 425.  The defendant then took the stand at his trial and testified to his innocence.  *Id*.  On cross-examination, the prosecutor elicited that he had previously refused to answer the same questions before the grand jury.  *Id*.  The judge in turn instructed the jury that the defendant's claim of constitutional privilege could be considered in determining what weight to give his testimony.  *Id*.  Justice Black wrote to emphasize that, under any circumstances, the assertion of a constitutional privilege should not be used to discredit or convict a person.  *Id*. at 425-26.

231, 235-36 (8th Cir. 1997) (noting that "the concept of equitable immunity is not well defined" and has not been recognized by the Eighth Circuit); *United States v. Fuzer*, 18 F.3d 517, 521 (7th Cir. 1994) (noting that the Seventh Circuit "has neither accepted nor rejected the doctrine of equitable immunity").  Ground One is denied.

### B.  Admission of the Initial Prosecutor's Letter (Ground Two)

In Ground Two, Petitioner asserts, as in her direct appeal, that she was denied her rights to due process of law, under the Fourteenth Amendment to the United States Constitution when the trial court rejected the admission of the letter from the initial prosecutor regarding Petitioner's cooperation (Doc. 1 at 12-15).  The Missouri Court of Appeals set out the following relevant facts:

> On cross-examination, defense counsel asked Sergeant Grote whether the defendant cooperated in the police investigation. Having previously testified that the defendant lied "throughout the whole interview," Sergeant Grote replied that she believed the defendant had not cooperated. The defendant later sought to introduce the initial prosecutor's letter to counter Sergeant Grote's testimony that, in her opinion, the defendant did not cooperate with police. The text of the letter stated in full:

>> Krystal Treasler (sic) is a witness for the Prosecution in a robbery/murder case which I filed, She is not a suspect or co-conspirator and will not be charged with any crime. Her unfortunate presence at the scene of this crime should not be used against her in any custody dispute. She has been cooperative with my office and with the police.

> Defense counsel told the court he was willing to redact the portion of the letter stating that the defendant was not a suspect or co-conspirator and would not be charged.

> Defense counsel argued the letter's statement that the defendant served as a witness for the prosecution would counter the State's contention that the defendant demonstrated consciousness of guilt by lying to police the morning of the robbery. In closing, the State did argue that the defendant lied to police to hide her involvement. The defense countered that by the end of the morning of the robbery and murder, the defendant told police the truth and later testified at Studer's preliminary hearing.

9

*Tresler*, 534 S.W.3d at 318–19.

The Missouri Court of Appeals found that the evidence was cumulative and that there was no reasonable probability that the jury would have acquitted Petitioner had the letter been admitted. *Tresler*, 534 S.W.3d at 319. The court noted that the jury had already heard evidence Petitioner had cooperated with the State—the State read in full Petitioner's testimony from Studer's preliminary hearing and proffered Petitioner's extensive written statement given to police the day of the crimes. *Id*. The court found that the jury could certainly have inferred from that evidence that Petitioner was cooperative, precisely what defense counsel argued in closing. *Id*.

Petitioner argues that the Missouri Court of Appeals' decision was contrary to and an unreasonable application of *Estelle v. McGuire*, 502 U.S. 62 (1991) (Doc. 1 at 14-15; Doc. 17 at 12). Claims regarding state-law evidentiary determinations rarely give rise to a viable federal habeas claim. *See Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996) ("A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process."); *King v. Roper*, No. 4:04 CV 1672 CDP/MLM, 2005 WL 1518291, at *15 (E.D. Mo. June 24, 2005) ("Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition.") (citing *Scott v. Jones*, 915 F.2d 1188, 1190-91 (8th Cir. 1990)). Petitioner has not shown that this is the rare case where the state court's evidentiary ruling was "so conspicuously prejudicial

or of such a magnitude as to fatally infect the trial." *Parker*, 94 F.3d at 460.[4]  Ground Two is denied.

### C.  Mention of Mr. Wiltermood's Status as a Sex Offender (Ground Three)

In Ground Three, Petitioner asserts, as in her direct appeal, that she was denied her rights to due process of law, a fair trial before an impartial jury, and to be tried only for the offense charged under the Sixth and Fourteenth Amendments to the United States Constitution when the trial court overruled Petitioner's request for a mistrial when the state violated a motion in limine regarding Mr. Wiltermood's status as a sex offender (Doc. 1 at 15-17).  The Missouri Court of Appeals set out the following relevant facts:

> The State played an edited version of the interview the defendant gave Hannibal police the day of the robbery and murder. Early in that interview, the following exchange occurred:
>
> > Detective: Does Gary [Wiltermood] live with you?
> >
> > Defendant: No. He's not allowed out there.
> >
> > Detective: Okay. Let's talk real life, because I don't give a shit whether Gary's out there or not to be honest with you. That trespass doesn't mean anything unless I'm screwing with him right at that moment. But that's not my ... [indiscernible as the defendant begins speaking at the same time]
> >
> > Defendant: He's not allowed out there because he's a sex offender, he's got a sex offense.
> >
> > Detective: Right, I understand that, Like I said, really how many people are out there who ain't supposed to be out there? Hundreds ..

---

[4]  To the extent Petitioner argues that the Missouri Court of Appeals' decision was an unreasonable determination of the facts, see Doc. 1 at 15, that argument is also denied. Petitioner specifically argues that the trial court's concern that the state would have called another witness to testify Petitioner was not cooperating was unreasonable because a law enforcement officer had already testified that Petitioner lied (Doc. 17 at 12-13).  This assertion confuses the veracity of the trial court's prediction with the reasonableness of the Court of Appeals' determination of facts.  Petitioner fails to identify any factual disputes with regard to the court's decision.

> Defendant: Yeah, yeah ... [indiscernible as the defendant and detective speak at the same time]
>
> Detective: So I appreciate that. I'm just asking does he live with you, stay out there? I don't give a shit one way or another.

The defendant did not object at the time this exchange was played, but requested a mistrial after the video ended. The court denied the request. The court then asked defense counsel: "Do you have any other request you want to make on that? Anything you want me to say to the jury?" Defense counsel did not respond to the court's invitation and request that the jury be instructed to disregard the sex-offender reference, and the proceedings returned to open court.

*Tresler*, 534 S.W.3d at 321–22.

> The Missouri Court of Appeals found that there was no prejudice:
>
> First, the defendant herself volunteered the information to the detective, and her reference was not responsive to any question the detective asked. Second, the reference was singular and isolated. The State did not emphasize it during trial, nor did the State mention it in closing argument. Third, the reference was vague and indefinite in that it did not clearly identify Wiltermood or give any details about a particular sex offense. In addition, immediately before and after the reference, both the defendant and the detective spoke simultaneously, and the defendant's statement is not easily discernible. Next, defense counsel did not object immediately at the time the reference was played for the jury, and he failed to respond to the court's invitation and request that the jury be instructed to disregard the reference. Had any prejudicial effect been created, it could have been removed by striking the reference and instructing the jurors to disregard it. Finally, we find that the single, brief reference did not play a decisive role in the jury's verdict. By the time the State played the video, Wiltermood had already testified against the defendant, and acknowledged that he pled guilty to murder in the shooting death of Arnett. He also testified that he had been high on methamphetamine for "at least a few weeks" [sic] the night of the murder, had problems with alcohol, and had a "pretty extensive" criminal history.

*Tresler*, 534 S.W.3d at 322–23 (citation omitted).

Petitioner argues that the Missouri Court of Appeals' decision was an unreasonable application of *Estelle v. McGuire*, 502 U.S. 62 (1991) (Doc. 1 at 17). However, in *Estelle*, the Supreme Court explicitly left open the question of whether the admission of evidence of other crimes solely to prove propensity violates due process. 502 U.S. at 75 n.5 ("[W]e express no

opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). Indeed, many courts have held that the admission of prior crimes evidence does not warrant federal habeas relief. *See Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) ("when a petitioner challenged the admission of his prior crimes, we denied relief because 'no clearly established Supreme Court precedent ... holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.'") (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512–13 (6th Cir. 2003)); *Allison v. Superintendent Waymart SCI*, 703 F. App'x 91, 97–99 (3d Cir. 2017) (denying habeas claim because petitioner could not identify clearly established Supreme Court precedent that the admission of prior bad acts evidence constitutes a violation of due process, and observing that Federal Rules of Evidence 413 and 414 allow for such evidence in sex crimes cases and have not been deemed unconstitutional); *Newkirk v. Capra*, 615 F. App'x 712, 712–14 (2d Cir. 2015), *as amended* (Sept. 21, 2015) (denying habeas claim because state court's ruling that prior crimes evidence did not violate petitioner's right to a fair trial was not contrary to clearly established federal law as determined by the Supreme Court, even though the trial court had determined that the evidence was inadmissible under state law); *Coningford v. Rhode Island*, 640 F.3d 478, 484–85 (1st Cir. 2011) (denying habeas claim, reasoning that "[t]he absence of an on-point pronouncement from the Supreme Court leaves hanging by the slimmest of threads the petitioner's claim that the state court's admission of the prior bad acts evidence can be deemed an unreasonable application of the broader fair-trial principle" and that "it is nose-on-the-face plain that the state court's approval of the introduction of the prior bad acts evidence in this case, whether or not an unarguably correct evidentiary ruling, was well within the universe of plausible evidentiary rulings" and "was, therefore, not so arbitrary or capricious as to work a

denial of the petitioner's constitutionally secured fair-trial right"); *Mejia v. Garcia*, 534 F.3d 1036, 1046-47 (9th Cir. 2008) (noting that Ninth Circuit precedent squarely foreclosed habeas claim that admission of impermissible propensity evidence violated petitioner's clearly established due process rights) (citing *Alberni v. McDaniel*, 458 F.3d 860 (9th Cir. 2006)). Here, Petitioner's claim is even more attenuated, involving prior crimes not by her, but by her then-boyfriend, and one vague, isolated reference at that. Petitioner has not shown that this is the rare case where the state court's ruling was "so arbitrary or capricious as to work a denial of the petitioner's constitutionally secured fair-trial right." *Coningford*, 640 F.3d at 484–85.[5] Ground Three is denied.

### D. Pre-Charge Counsel's Failure to Seek an Immunity Agreement (Ground Four)

In Ground Four, Petitioner asserts, as in her post-conviction case, that she was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when pre-charge counsel failed to secure an agreement for immunity before allowing her to testify at Mr. Studer's preliminary hearing (Doc. 1 at 17-20). Respondent argues that there is no right to effective assistance of pre-charge counsel (Doc. 9 at 28-29). The Court agrees. The Supreme Court has repeatedly imposed a bright-line rule that the Sixth Amendment right to counsel "does not attach until the initiation of adversary judicial proceedings," "'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *United States v. Gouveia*, 467 U.S. 180, 188 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 688-89 (1972)); *see also Moran v. Burbine*, 475 U.S. 412, 428-31 (1986). "The rule is not 'mere formalism,' but a recognition of the point at which 'the government has committed itself to

---

[5] To the extent Petitioner argues that the Missouri Court of Appeals' decision was an unreasonable determination of the facts, see Doc. 1 at 17, that argument is also denied. Petitioner fails to identify any factual disputes with regard to the Court of Appeals' decision.

prosecute,' 'the adverse positions of government and defendant have solidified,' and the accused 'finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'" *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008) (citing *Kirby*, 406 U.S. at 689). The Missouri Court of Appeals' decision denying Petitioner's claim was not contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).[6]

### E.  Trial Counsel's Failure to Seek a Change of Venue (Ground Five)

In Ground Five, Petitioner argues that she was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to seek a second change of venue to a county other than Ralls County (Doc. 1 at 20-21). The parties agree that the claim was not previously raised in state court and is therefore procedurally defaulted (Doc. 1 at 21; Doc. 9 at 32).

Petitioner argues that the default is excused under *Martinez v. Ryan*, 566 U.S. 1 (2012) because Petitioner's post-conviction counsel was ineffective for failing to properly investigate and develop the claim, and to raise it in Petitioner's amended motion (Doc. 1 at 21; Doc. 17 at 14-15). In *Martinez*, the Supreme Court determined that ineffective assistance of counsel during initial-review collateral proceedings may establish cause for procedural default of a claim of ineffective assistance at trial:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

---

[6]  To the extent Petitioner argues that the Missouri Court of Appeals' decision was an unreasonable determination of the facts, see Doc. 1 at 20, that argument is also denied. Petitioner does not dispute that the acts at issue took place during representation before she was charged.

566 U.S. at 17.  "To overcome the default, a prisoner must … demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  *Id.* at 14.

To succeed on a claim of ineffective assistance of counsel, Petitioner must show that 1) counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation, and 2) Petitioner was prejudiced by counsel's failure. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  To prove prejudice, Petitioner must show there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Id.* at 694.

Petitioner's case was originally in Marion County, Missouri.  On March 17, 2015, the trial court took up Petitioner's pretrial motion for change of venue.  Counsel for Petitioner cited to Missouri Supreme Court Rule 32.03, which provides for a change of venue as a matter of right in counties like Marion County, which have seventy-five thousand or fewer inhabitants.  Counsel for Petitioner and counsel for the State agreed that a change of venue to Ralls County would be acceptable.  The motion was granted, and the case was transferred to Ralls County, Missouri.

The sole evidence of ineffectiveness cited by Petitioner is a comment during voir dire that "everybody in Ralls County knows the [victim's family]" (Doc. 1 at 20)  Otherwise, Petitioner summarily concludes that a reasonably competent attorney would have objected to the transfer to Ralls County or sought another venue and that, but for trial counsel's failure to do so, the outcome of the trial would have been different (*id.* at 21).  Respondent points to Missouri Supreme Court Rule 32.09(b), which provides that "No defendant shall be allowed more than

16

one change of venue," with exceptions not relevant here (Doc. 9 at 32).  Petitioner counters that counsel could have filed a motion for change of venue pursuant to Rule 32.09(c), which provides that "nothing … shall prohibit a judge from ordering a change of venue … when fundamental fairness so requires" (Doc. 17 at 15).  Petitioner has not shown that an exceptional second motion for change of venue on the basis of "fundamental fairness" would have been meritorious, nor has Petitioner shown that she did not receive a fair trial in Ralls County.  *See State v. Carr*, 687 S.W.2d 606, 612–13 (Mo. Ct. App. 1985) (affirming denial of Rule 32.09(c) motion for change of venue and observing that prejudice was not established by voir dire of the jury panel where the court properly struck individuals for cause and nothing indicated that the selected jurors could not or did not put what they had heard aside).  Petitioner has not demonstrated that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one.  Ground Five is denied.

### III.  CONCLUSION

This case is a cautionary tale.  The initial prosecutor indicated that Petitioner was a witness and nothing more, and that he had no intention of charging her with any offense.  Petitioner in turn testified at Studer's preliminary hearing, incriminating herself.  Several weeks later, the same prosecutor reiterated that Petitioner was not a suspect or a co-conspirator and would not be charged with any crime.  Nevertheless, the Attorney General's Office subsequently took over, charged Petitioner with first-degree robbery and second-degree murder, and obtained a conviction and total sentence of 20 years.  The Court is sympathetic to Petitioner's plight.  However, the law does not allow for federal habeas relief.

For the reasons stated above, the Court finds that Petitioner is not entitled to federal habeas relief.  Furthermore, Petitioner has failed to make a substantial showing of the denial of a

constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted).  Thus, the Court will not issue a certificate of appealability.  28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability will not be issued.  28 U.S.C. § 2253.

A separate Judgment shall be entered in accordance with this Memorandum and Order.

Dated this 31st day of March, 2025.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE